UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 1:21-cv-1405 (LO/TCB)<br>) |
| J. STROBER & SONS ROOFING, LLC, *et al.*, | )<br>) |
| Defendants. | )<br>) |

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court on Plaintiff's Motion for Default Judgment (Dkt. 8).[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court GRANT Plaintiff's motion.

I. BACKGROUND

**A.    Procedural Posture**

Plaintiff Board of Trustees for the Sheet Metal Workers' National Pension Fund ("Plaintiff" or "the Fund"), filed this lawsuit on December 17, 2021 against Defendants J. Strober & Sons, LLC ("Strober I"), J. Strober and Sons Roofing, LLC ("Strober II"), Strober and Sons Roofing, LLC ("Strober III"), Strober & Sons, LLC ("Strober IV"), and Strober Roofing and Maintenance, LLC ("Strober V") (collectively, "Defendants") pursuant to sections 502(g)(2) and

---

[1] The relevant filings before the Court include Plaintiff's Complaint ("Compl.") (Dkt. 1); Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 8); Brief in Support of Plaintiff's Motion for Default Judgment ("Mem. Supp.") (Dkt. 9); Declaration of Kenneth Anderson Jr. ("Anderson Decl.") (Dkt. 9-1); Declaration of Diana M. Bardes ("Bardes Decl.") (Dkt. 9-2); and all attachments and exhibits submitted with those filings.

1

515, 4219, 4221, and 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1332(a)(3), (d)(1), (g)(2), 1145, 1399, 1401, and 1451. (Compl. ¶ 1; Mot. Default J. ¶ 1.) The Fund seeks to collect a monetary judgment consisting of withdrawal liability, accrued interest, liquidated damages, and attorneys' fees and costs pursuant to ERISA, a collective bargaining agreement ("CBA") between Strober I and the International Association of Sheet Metal, Air, Rail, and Transportation Workers, formerly known as the Sheet Metal Workers' International Association, Local Union No. 27 ("Local 27"), and the Trust Document governing the Fund. (Compl. ¶ 1; Mem. Supp. at 1.)

Defendants have failed to appear in this matter or otherwise respond to Plaintiff's Complaint. (Mot. Default J. ¶ 3.) After the Clerk entered default against Defendants on February 7, 2022 (Dkt. 7), Plaintiff filed the instant motion, accompanying memorandum, declarations, and supporting documentation (Dkts. 8-9). When Defendants failed to appear at the hearing before the Court on March 10, 2022 (Dkt. 11), the Court took this matter under advisement to issue this Report and Recommendation.

    **B.**    **Jurisdiction and Venue**

Before the Court can enter default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

*First*, the undersigned finds that this Court has proper subject-matter jurisdiction. A federal district court has subject-matter jurisdiction over ERISA actions pursuant to the jurisdictional provisions in both 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c). *See* 29 U.S.C. § 1132(e)-(f) (conferring jurisdiction on the federal district court in the judicial district "where the plan is administered," regardless of the amount in controversy). Further, a federal district court has original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the

2

United States." 28 U.S.C. § 1331. In this case, Plaintiff asserted claims pursuant to ERISA, a federal statute. (*See* Compl. ¶ 1.) Furthermore, the Fund is administered in Falls Church, Virginia. (*Id.* ¶ 3.) This Court accordingly has subject-matter jurisdiction over the claims in this action.

*Second*, this Court has personal jurisdiction over Defendants. Due to ERISA's nationwide service of process provision, personal jurisdiction is proper if the defendants have sufficient national contacts with the United States and it comports with the Fifth Amendment. *See* 29 U.S.C. 1132(e)(2); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443-44 (4th Cir. 2015) (citation omitted) ("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment."); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. 1997). Here, as discussed more below, Plaintiff served Defendants pursuant to Federal Rule of Civil Procedure 4 and ERISA's nationwide service of process provision. (*See* Dkt. 6.) Further, Defendants are incorporated in New Jersey and their principal places of business are in Ringoes, Lambertville, Jackson, and Flemington, New Jersey. (Compl. ¶¶ 7-11.) Therefore, Defendants have sufficient national contacts with the United States, and this Court has personal jurisdiction over them.

*Lastly*, the undersigned finds that venue is proper in this Court. For ERISA actions, venue is proper in the federal judicial district where the plan is administered. *See* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered."). Here, venue is proper because the Funds are administered within the Eastern District of Virginia. (Compl. ¶ 3; Anderson Decl. ¶ 3.) Moreover, venue is proper in a federal judicial district in which a substantial part of the events or

omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b)(2). Here, venue is also proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. (*See* Compl. ¶ 3.)

### C. Service of Process

Lastly, before the Court can render default judgment, it must be satisfied that the defaulting parties have been properly served. Here, on January 8, 2022, Plaintiff's process server served Defendant Strober Roofing and Maintenance, LLC by providing the summons, Complaint, and related materials to Ben Strober, the individual designated to receive service on behalf of the organization, on January 1, 2022. (Mem. Supp. at 7; Dkt. 4.) The process server served the remaining Defendants on January 8, 2022 by providing the summons, Complaint, and related materials to Clinton Strober, the individual designated to receive service on behalf of the organizations, on January 8, 2022. (Mem. Supp. at 7-8; Dkt. 5.) The undersigned finds that Plaintiff's service comports with Federal Rule of Civil Procedure 4(c) and (h)(1)(B) and therefore that Defendants were properly served.

## II. FINDINGS OF FACT AND PROPOSED FINDINGS OF LAW

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal

4

Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Based on the Complaint, Plaintiff's Motion for Default Judgment and supporting Memorandum, the Declaration of Kenneth Anderson Jr., the Declaration of Diana M. Bardes, and the supporting documents submitted with these filings, the undersigned makes the following findings of fact and proposed findings of law.

### A. The Parties

Plaintiff is either an employee pension benefit plan within the meaning of sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of section 3(3)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. (Compl. ¶ 5, Anderson Decl. ¶ .) The Fund is a jointly administered trust fund pursuant to section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). (*Id.*) The Trustees of the Fund are duly authorized and administer the Fund for the benefit of the participants and beneficiaries of the Fund. (*Id.*) or a joint labor-management organization that provides benefits to certain collectively bargained sheet-metal workers. (Compl. ¶ 5; Anderson Decl. ¶ 3.) The Fund is administered out of an office located in Falls Church, Virginia. (Compl. ¶ 3; Anderson Decl. ¶ 3.) Plaintiff's trustees collectively brought this lawsuit in the name of the its trust or plan on behalf of their participants and beneficiaries pursuant to Federal Rule of Civil Procedure 17. (Compl. ¶ 6.)

Strober I was a company incorporated in New Jersey with its principal place of business in Ringoes, New Jersey. (Compl. ¶ 7.) Defendants Strober II, III, IV, and V are four companies incorporated in New Jersey with their principal places of business at 1509 Route 179,

5

Lambertville, New Jersey 08559; 16 Laga Court, Ringoes, New Jersey 08551; 20 Camelot Terrace, Jackson, New Jersey 08527; and 3 Sherwood Court, Flemington New Jersey, 08822. (*Id.* ¶¶ 8-11.) Defendants are employers within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and have engaged in an industry affecting commerce within the meaning of ERISA, 29 U.S.C. §§ 1002(11) and (12). (*Id.* ¶¶ 7-11.)

### B. Joint and Several Liability

Plaintiff asserts that while Defendants are not signatories to the CBA giving rise to this litigation, as distinct legal entities from Strober I, "Strober II, Strober III, Strober IV, and Strober V are an alter egos and/or successors of Strober I, and thus are liable for Strober I's obligations to the Fund." (Compl. ¶ 16; Anderson Decl. ¶ 6.) Plaintiff alleges that "Defendants had overlapping operations with Strober I and substantially continued the operations of Strober I upon Strober I's cessation of business." (Compl. ¶ 17; Anderson Decl. ¶ 7.). Plaintiff further alleges that Defendants and Strober I "are affiliated business enterprises with, among other characteristics, substantially similar ownership and common management, physical assets, equipment and location, intangible assets, workforce, business services, and customers." (*Id.*)

The companies share common ownership. (Compl. ¶ 17(b); Anderson Decl. ¶ 7(b).) Strober I, II, III, and IV are all owned by members of the Strober family, including Michael Strober, his ex-wife Susan Strober Comerford, their sons Clinton, Stephen, and Dan Strober, and Susan's husband Kevin Comerford. (Compl. ¶ 17(b); Anderson Decl. ¶ 7(b).) Strober V is operated and managed by the Strobers. (Compl. ¶ 17(c); Anderson Decl. ¶ 7(c).) Steve and Clinton Strober are partners/owners of Strobers II, III, IV, and V. (Compl. ¶ 17(d), (e); Anderson Decl. ¶ 7(d), (e), Exs. 7-8.) The companies have been family-owned by the Strober's since 1928. (Compl. ¶ 17(b)-(e); Anderson Decl. ¶ 9(a), Ex. 4.)

6

Strober I and Defendants employ the same classifications of employees, train employees similarly, and perform the same type of work in the same type of industry in the same geographic market. (Compl. 17(f); Anderson Decl. ¶ 7(f).) Defendants were created around the same time that Strober I filed for bankruptcy and ceased operations. (Compl. ¶ 17; Anderson Decl. ¶ 5-7.) Ultimately, Plaintiff alleges that Strober I established Defendants to evade its obligations under the CBA. (Compl. ¶ 18; Anderson Decl. ¶ 8.)

To determine whether a company is an alter ego under Fourth Circuit law, the Court must ask (1) whether the entities are "substantially the same" or if the "same entity controls both the old and new employer"; and, if yes, (2) "whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations." *Alkire v. NLRB*, 716 F.2d 1014, 1020 (4th Cir. 1983); *see also, NLRB v. Kodiak Elec. Co., Inc.*, 70 Fed. Appx. 664 (4th Cir. 2003); *Bd. of Trs., Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Gillis Sheet Metal, Inc.*, No. 1:10cv33 (TSE/TRJ), 2010 WL 4025033, at *2 (E.D. Va. Sept. 21, 2010).

The undersigned finds that Defendants are an alter egos/successors of Strober I under this test. First, the companies are "substantially identical" in that they share overlapping family ownership and management, overlapping and similar employees, the same industry, and the same geographic region. (*See* Compl. ¶ 17; Anderson Decl. ¶ 7; Mem. Supp. at 11.) Defendants have continued the operations of Strober I since it's bankruptcy and cessation of operations. (Mem. Supp. at 11.) The Court therefore finds that Strober I and Defendants are substantially the same. Second, Defendants are not signatories to the CBA, and Strober I is benefitting from eliminating its labor obligations as Defendants continue to perform covered work. (Compl. ¶ 18; Anderson Decl. ¶ 8.) Defendants are performing the same work in the same industry with the same employees

as Strober I but are reaping the financial advantage of not paying the benefits, including pension benefits, as required by the CBA. (Compl. ¶ 18; Anderson Decl. ¶ 8.) It is reasonably foreseeable that Defendants benefit from operating free of the requirements of the CBA.

Defendants were created around the same time that Strober I filed for bankruptcy and ceased operations. The creation of Defendants resulted in an expected—or at least reasonably foreseeable—benefit to Strober I. *See Kodiak*, 70 Fed. Appx. at 668; *Bd. of Trs., Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Gillis Sheet Metal, Inc.*, No. 1:10-cv-00943 (LO/IDD), 2011 WL 1558701, at *5 (E.D. Va. Mar. 21, 2011). Therefore, as an alter ego, Defendants are also an employer within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and are bound by the CBA. (*See* Compl. ¶ 1; Anderson Decl. ¶ 9.) Accordingly, the undersigned finds that Strober I and Defendants should be held jointly and severally liable for any judgment entered by this Court.

### D. Defendants' Obligations

#### 1. *Defendants' Payment Obligations*

At the relevant times, Strober I, and therefore the alter ego/successor Defendants, employed employees represented by Local Union 27. (Compl. ¶ 12.) Local Union 27 entered into a CBA, which represented Strober I's employees for purposes of collective bargaining. (Compl. ¶ 12.) Local 27 is a labor organization representing employees in an industry affecting interstate commerce. (Compl. ¶ 12.) Pursuant to the CBA, Strober I was obligated to submit monthly remittance reports and fringe benefit contributions to the Fund for all hours worked or paid on behalf of covered employees within Local 27's jurisdiction. (Compl. ¶ 13; Decl. Anderson ¶ 10.) Moreover, Strober I was obligated to abide by the terms and conditions of the Trust Agreement establishing THE FUND, as well as any policies or procedures adopted by the Board of Trustees.

(Compl. ¶ 14; Anderson Decl. ¶ 11, Ex. 9.)

Here, Defendants were obligated to pay withdrawal liability to the Fund pursuant to the CBA, Trust Document, ERISA, and the LMRA. By signing a CBA with the Fund, an employer agrees to pay withdrawal liability payments to the Fund under certain conditions. (Compl. ¶ 24; Anderson Decl. ¶ 14.) An employer effects a withdrawal when it ceases performing work covered by the CBA. 29 U.S.C. § 1383(b). The terms of a withdrawal are governed by the Trust Document and ERISA. (Anderson Decl. Ex. 9, at 105.) As relevant here, ERISA provides that when it is determined that an employer completely withdraws from a plan, "the plan sponsor shall notify the employer of the amount of the liability and the schedule of liability payments and demand payment in accordance with the schedule." 28 U.S.C. § 1399(b).

Employers have ninety (90) days after receipt of the initial notice to demand a review of the liability amount or schedule. § 1399(b)(1)(A). Employers may also initiate arbitration to challenge withdrawal liability. 29 U.S.C. § 1401(a)(1). If no arbitration is brought, the withdrawal liability as set out in the § 1399(b)(1) schedule shall be due to the plan sponsor. § 1401(b)(1). The employer may be in default if it fails to complete any of the payments in the schedule and does not cure the failure within sixty (60) days of receiving written notice of such failure. § 1399(c)(5). The plan may require immediate payment of the outstanding withdrawal liability, plus interest, from a defaulting employer. *Id.* The defaulting employer may also be liable for liquidated damages and reasonable attorneys' fees and costs. 29 U.S.C. § 1451 (b),(e); (Compl. ¶ 28-30.)

Specifically, under ERISA, the CBA, and Trust Document, when Defendants are in default and the Fund files suit to recover the withdrawal liability, Defendants are jointly and severally liable to pay the following:

(1) The withdrawal liability assessment pursuant to the Trust Document and Section 4219(c)(5) of ERISA, 29 U.S.C. §1399(c)(5);

9

  (2) Interest at the rate of 0.0205% compounded daily starting on the date of the first late payment until the date of payment pursuant to the Trust Document; and

  (3) Liquidated Damages in the amount of 20% of the withdrawal liability pursuant to the Trust Document.

(Compl. ¶¶ 28-30, 35-39.).

### 2. *Defendants' Unpaid Contributions*

The undersigned finds that Defendants failed to comply with the obligations discussed above, namely, to submit the required withdrawal liability to the Fund under the terms of the CBA and Trust Document. (Compl. ¶¶ 31-39; Anderson Decl. ¶¶ 17-19.) Plaintiff alleges that Strober I ceased performing work covered by the CBA on April 10, 2010. § 1383(b); (Compl. ¶20; Anderson Decl. ¶¶ 12, 25.) Strober I filed for bankruptcy on December 13, 2010, and the proceeding concluded in September 2016. (Compl. ¶ 20; Anderson Decl. ¶ 15) By ceasing operations, Strober I effected an " event of withdrawal" under Title IV of ERISA, and Strober I was required to pay withdrawal liability under ERISA. § 1399(b). Defendants, as alter egos/successors to Strober I, continued performing the covered work of Strober I within five years of Strober I's withdrawal from the CBA. (*Id.*)

The Fund sent a notice of withdrawal to Strober V, care of Steven Strober, on April 5, 2019, advising the company of the owed withdrawal liability from Strober I's withdrawal. (Anderson Decl. ¶ 13, Ex. 10.) The notice assessed the amount of owed withdrawal liability to be $112,169.92 and that the amount was amortized pursuant to section 4219(c) of ERISA, 29 U.S.C. § 1399(c) in a payment schedule to 7 quarterly payments in the amount of $15,809.67 each. (*Id.*) The notice set the first quarterly payment to be due May 1, 2019 and the final payment of $5,172.07 on February 1, 2021. (*Id.*)

Neither Strober I nor any of the Defendants demanded to request a review of the liability amount or payment schedules. (Anderson Decl. ¶ 15.) Neither Strober I nor Defendants initiated

an arbitration to dispute the withdrawal liability (*Id.*) The first payment was due April 1, 2020, and Strober I and Defendants failed to complete such payment or any future payment. (Anderson Decl. ¶ 16.) To date, neither Strober I nor Defendants have made any payment. (*Id.*)

In a May 6, 2019 letter, the Fund notified Strober V of the failure to make the first payment under the amortized schedule, providing an opportunity to cure the failure. (Anderson Decl. ¶ 17, Ex. 12.) The Fund also sent notice to all Defendants on February 8, 2021, notifying that they are jointly and severally liable for Strober I's withdrawal liability and reiterating the April 5, 2019 notice. (Anderson Decl. ¶ 14, Ex. 11.) The Fund further notified Defendants that failure to cure the delinquency within sixty (60) days of their receipt of the letter would constitute default under 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5). The Fund also stated in the case of default that it would file suit against Defendants seeking the full, unpaid withdrawal liability. (*Id.*, Exs. 11, 12.)

Because Defendants failed to pay and are in default, Plaintiff is entitled to repayment of withdrawal liability, interest, and liquidated damages pursuant to ERISA and the Trust Document. (*Id.* ¶ 22; Mem. Supp. at 12-13.) Failure to make the withdrawal payment is treated as any other delinquent payment under ERISA. 29 U.S.C. § 1451(b). Accordingly, Plaintiff alleges that they are entitled to:

(1) $112,169.92 in Defendants' unpaid withdrawal liability pursuant to 29 U.S.C. § 1399(c)(5);
(2) $25,190.35 in interest calculated at the rate of 0.0205% per day, compounded daily, on the delinquent contributions (through January 31, 2020) pursuant to the Trust Document; and
(3) $22,433.98 in liquidated damages in the amount of 20% of the delinquent withdrawal liability pursuant to the terms of the Trust Document.

(Compl. ¶¶ 35-37; Anderson Decl. ¶¶ 18-22; Mem. Supp. at 12-13. ¶ 6.) These amounts total $159,794.25.

11

### F.   Attorneys' Fees and Costs

Lastly, Plaintiff seeks attorneys' fees and costs in the total amount of $6,302.22 pursuant to ERISA, 29 U.S.C. § 1132, and the Trust Document. (Compl. ¶ 38; Mot. Default J. ¶ 6; Bardes Decl. ¶ 4; *see* 29 U.S.C. § 1132(g)(2) ("[T]he court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant.").) Plaintiff seeks this amount based on (1) $4,929.50 in attorneys' fees and (2) $1,372.72 in costs. (Bardes Decl. ¶¶ 5-6.)

First, Plaintiff seeks $4,929.50 in attorneys' fees based on 24.2 hours of billable work. (*Id.* ¶ 5.) In this matter, a partner billed at a rate of $275.00 per hour and a paralegal billed at a rate of $150.000 per hour. (*Id.*) Counsel spent time researching legal theories, drafting and filing the complaint, arranging for service of process, drafting and filing the clerk's entry of default, and drafting the instant motion and supporting documents. (*Id.*) In support of this request, Plaintiff's counsel submitted an itemized chart outlining the legal services performed, the attorney who performed the services, and the time spent on each item. (*Id.*, Ex. 1.) Upon review of the submitted billing entries, the undersigned finds that the number of hours counsel expended on the matter is reasonable. Further, the undersigned finds that the hourly rates are consistent with reasonable rates charged in the Eastern District of Virginia for like matters. (*See id.* ¶¶ 8-10, Exs. 2-4.)

Second, Plaintiff seeks $1,372.72 in costs, which include (1) $970.72 in process-server fees and $402.00 in filing fees. (*Id.* ¶ 6.) Upon review of counsel's submissions, the undersigned finds it appropriate to award Plaintiff's requested attorneys' fees and costs.

## IV. REQUESTED RELIEF

As outlined above, Plaintiff requests that the Court (1) enter default judgment against Defendants, (2) enter judgment against Defendants in the amount of $159,794.25, consisting of:

- $112,169.92 in Defendants' unpaid withdrawal liability;
- $25,190.35 in interest calculated at the rate of 0.0205% per day, compounded daily from the date the payment was due (through March 11, 2022);
- $22,433.98 in liquidated damages on the unpaid withdrawal liability;

and (3) grant Plaintiff $6,302.22 in attorneys' fees and costs. (Mem. Supp. 12-13.)

## V. RECOMMENDATION

Upon review of the entire record in this matter, the undersigned recommends that the Court enter an order (1) granting Plaintiff's Motion for Default Judgment against Defendants Strober II, III, IV, and V; (2) entering judgment against Defendants in the amount of $159,794.25, consisting of Defendants' unpaid withdrawal liability, accrued interest, and liquidated damages, to be paid jointly and severally by Defendants; and (3) entering judgment against Defendants for $6,302.22, consisting of Plaintiff's attorneys' fees and costs incurred in pursuing this matter, to be paid jointly and severally by Defendants.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

April 21, 2022
Alexandria, Virginia