IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND,<br><br>    Plaintiff,<br><br>    v.<br><br>J. STROBER & SONS ROOFING, LLC, *et al.*,<br><br>    Defendants. | Case No. 1:21-cv-1405 |

## MEMORANDUM OPINION

At issue in this case arising under the Employee Retirement Income Security Act of 1974 (the "ERISA"), 29 U.S.C. § 1001 *et seq.*, is Defendants' liability for an alleged complete withdrawal from a pension plan administered by the plaintiff, the Board of Trustees of the Sheet Metal Workers' National Pension Fund. Plaintiff's complaint alleges that the four defendants—J. Strober & Sons Roofing, LLC; Strober and Sons Roofing, LLC; Strober & Sons, LLC; and Strober Roofing and Maintenance, LLC (collectively, "Defendants")—are successors to, or alter egos of, J. Strober & Sons, LLC, a bankrupt building and construction employer that was obligated to contribute to the plaintiff's pension plan while it was still solvent. As such, plaintiff alleges that Defendants are jointly and severally liable for J. Strober & Sons, LLC's withdrawal liability.

Defendants never filed a responsive pleading pursuant to Rule 12, Fed. R. Civ. P., and, accordingly, a final default judgment was entered against Defendants on June 2, 2022 (Dkt. 14).[1]

---

[1] Plaintiff filed its lawsuit on December 17, 2021. After Defendants failed to respond, Plaintiff moved for default judgment against Defendants on February 14, 2022. U.S. Magistrate Judge Theresa C. Buchanan issued a Report and Recommendations on Plaintiff's motion on April 21, 2022. U.S. District Judge Liam

1

More than ten months later, on April 8, 2023, Defendant Strober Roofing and Maintenance, LLC ("SRM") appeared in this action. SRM now seeks to set aside the default judgment on grounds of improper service of process and excusable neglect (Dkt. 16).[2] The parties have fully briefed and argued this matter, and it is thus ripe for disposition.

## I.

The pertinent facts and proceedings to date are summarized as follows:

- Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund (the "Fund"), administers an employee pension benefit plan governed by the ERISA.

- J. Strober & Sons, LLC ("Strober I") is a defunct legal entity that, while solvent, did business as "Strober Roofing." Plaintiff alleges that Strober I is Defendants' predecessor in interest.

- Defendants J. Strober & Sons Roofing, LLC ("Strober II"); Strober and Sons Roofing, LLC ("Strober III"); Strober & Sons, LLC ("Strober IV"); and Strober Roofing and Maintenance, LLC ("SRM") (collectively referred to as "Defendants"), are legal entities associated with the brand "Strober Roofing," which holds itself out as a New Jersey roofing contractor.

- The Fund sued Defendants on December 17, 2021. The Fund alleges that Defendants were the successors or alter egos of J. Strober & Sons, LLC ("Strober I"), and that Strober I effected a complete withdrawal from the Fund's pension benefit plan on or around April 1, 2010, thereby causing Strober I to incur withdrawal liability pursuant to 29 U.S.C. § 1383(b).

- Strober I filed for Chapter 11 bankruptcy on December 13, 2010. *See* Voluntary Petition, *In re J. Strober & Sons, LLC*, No. 10-48400 (Bankr. D.N.J.) (Dkt. 1). Strober I's bankruptcy was converted to a Chapter 7 proceeding on November 30, 2011. *See id.* at Dkt. 163. Strober I's bankruptcy estate was finally liquidated and its bankruptcy case closed on September 28, 2016. *See id.* at Dkt. 374.

---

O'Grady adopted Judge Buchanan's recommendation on May 19, 2022 and directed the Clerk to enter judgment against Defendants.

[2] The three other Defendants—J. Strober & Sons Roofing, LLC; Strober and Sons Roofing, LLC; and Strober & Sons, LLC—have never appeared or moved in this action. SRM's motion was filed only on its own behalf.

2

- The Fund further alleges that Strober II, Strober III, and Strober IV were incorporated on November 29, 2009; December 7, 2011; and December 6, 2011, respectively. SRM, the movant here, was incorporated on April 16, 2012.

- The Fund further alleges that Defendants are successors and/or alter egos of Strober I: They have, in the Fund's words, "substantially similar ownership and common management, physical assets, equipment and location, intangible assets, workforce, business services, and customers." Complaint at ¶ 17 (Dkt. 1). Indeed, SRM's website indicates that "Strober Roofing" has been in business "since 1928." Declaration of Kenneth Anderson Jr., at Ex. 7 (Dkt. 9-1).

- The Fund further alleges that Defendants, as Strober I's successors and/or alter egos, were jointly and severally liable for Strober I's withdrawal liability. Complaint at ¶ 34.

- After the Fund filed its Complaint, a summons issued (Dkt. 3). On January 1, 2022, that summons was served on Ben Strober, SRM's sole owner's brother-in-law, at SRM's registered address for service of process (Dkt. 4).

- SRM did not respond to the Fund's complaint. Nor did any of the other Defendants.

- Because Defendants never responded to the complaint, on February 2, 2022, the Fund requested (and promptly received) an entry of default against all Defendants, including SRM (Dkts. 6, 7). The Fund moved for default judgment on February 14, 2022 (Dkt. 8). Magistrate Judge Theresa C. Buchanan held a hearing on that motion on March 11, 2022 (Dkt. 11). On April 22, 2022, Magistrate Judge Buchanan issued a Report and Recommendations recommending entering a default judgment against Defendants (Dkt. 12). On May 19, 2022, U.S. District Judge Liam O'Grady adopted Magistrate Judge Buchanan's report in full (Dkt. 13) and, accordingly, a final judgment of damages in the amount of $166,096.47 was entered against SRM on June 2, 2022 (Dkt. 14).

- Each filing related to the Fund's motion for default judgment was sent to SRM's registered address by certified mail. This included (1) Plaintiff's Request for Entry of Default; (2) Plaintiff's Motion for Default Judgment; (3) Plaintiff's Memorandum of Law in support of the same; and (4) Plaintiff's Notice of Hearing on its motion for default judgment. Additionally, the Clerk of Court mailed SRM a copy of Judge O'Grady's Order adopting Magistrate Judge Buchanan's Report and Recommendations.[3] All of these documents were sent to SRM's registered address for service of process in Flemington, New Jersey.

---

[3] Although the Fund states that the Clerk of Court's Office sent SRM other filings, the Clerk's Office was only able to confirm mailing of Judge O'Grady's Order.

3

- On April 8, 2023, 15 months after service and ten months after entry of final judgment, SRM's counsel entered an appearance in this action and moved to vacate the judgment against it.[4]

In its motion, SRM asserts that it lacked actual notice of the Fund's lawsuit until Magistrate Judge Buchanan's Report and Recommendations were brought to the attention of SRM's sole owner, Ying Lin, in January 2023. According to SRM, Rule 60(b), Fed. R. Civ. P., thus requires setting aside the Clerk's judgment on grounds of improper service of process and excusable neglect.[5] In response to SRM's motion, the Fund argues that Rule 60(b) does not permit relief on these facts.

## II.

Rule 60(b), Fed. R. Civ. P., provides that, "[o]n motion and just terms," a court "may" grant relief from final judgment. This remedy is "extraordinary and is only to be invoked upon a showing of exceptional circumstances." *United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018) (quoting *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979)). Settled Fourth Circuit precedent makes clear that the analysis in a Rule 60(b) motion proceeds in two stages. *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993). First—because granting relief from final judgment is within a court's discretion—a successful Rule 60(b) movant must meet "each of three threshold conditions," namely, (i) that the motion is timely, (ii) that the movant has a meritorious defense, and (iii) that the nonmovant would not be prejudiced were the judgment to be set aside. *Id.* If the threshold conditions are not met, the analysis ends, and the motion to vacate the

---

[4] On April 10, 2023, this action was transferred from Judge O'Grady to this judge.

[5] SRM also argues that the judgment against it should be "vacated for public policy concerns." Memorandum of Law in Support of SRM's Motion to Vacate, at 15 (Dkt. 18). SRM cites no authority that would permit setting aside a default judgment for any reason other than the six enumerated in Rule 60(b). SRM's public policy argument must be denied.

4

judgment must be denied. If the threshold conditions are met, a Rule 60(b) movant "must satisfy one of the six enumerated grounds for relief under Rule 60(b)." *Id.* at 266. Among these enumerated grounds are "(1) mistake, inadvertence, surprise, or excusable neglect" and that "(4) the judgment is void." Fed. R. Civ. P. 60(b).

### A.

These principles, applied here, suggest that SRM satisfies all three threshold conditions. First, SRM's motion was timely filed. SRM filed this motion in January 2023, approximately three months after receiving actual notice of the default judgment against it, and SRM has provided an explanation of its delay. *See Cent. Operating Co. v. Utility Workers of Am.*, 491 F.2d 245, 253 (4th Cir. 1974). SRM moved for relief within the one-year deadline set for Rule 60(b) by Rule 60(c)(1), Fed. R. Civ. P., and it acted reasonably promptly after it received actual notice of the action.[6]

Next, SRM's defenses can be assumed to be potentially meritorious, at least at this preliminary stage. SRM argues that it is not Strober I's alter ego and that, regardless, the Fund's lawsuit was time-barred. The Fund vigorously disputes both assertions, responding that SRM cites the wrong statute of limitations and the wrong accrual date for this action. The Fund also presents a number of facts to rebut SRM's contention that it is not Strober I's alter ego. It is difficult to assess the merits of SRM's defenses without further litigation, but they appear plausible and non-frivolous. SRM has met its modest threshold burden, and the merits of SRM's defenses are assumed *arguendo* for purposes of this motion.[7]

---

[6] In addition, a voidness challenge under Rule 60(b)(4) is not subject to the limits of Rule 60(c)(1). A void judgment is a legal nullity from its inception and cannot "acquire validity merely by the passage of time." *Jackson v. United States*, 245 F. App'x 258, 260 (4th Cir. 2007); *see also Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002).

[7] This Memorandum Opinion does not address the merits of SRM's defenses any further. Nothing herein should be construed to endorse or adjudicate SRM's substantive claims.

Finally, it appears the Fund would not be greatly prejudiced if the judgment against SRM is set aside. This factor "is of lesser importance" than the other two. *Gray*, 1 F.3d at 265. The Fund has not shown that it has sunk extensive resources into the litigation of this action or the enforcement of the resulting judgment. The Fund cites the untoward signal that granting relief would send to other defaulting employers, but this objection merely restates its argument on the first timeliness factor. Therefore, it appears at this stage and on this meager record that SRM has met the three threshold conditions.

### B.

Given that the threshold requirements are satisfied, the next step is to consider whether SRM has shown any of the six enumerated grounds for relief under Rule 60(b). *See Gray*, 1 F.3d at 266. SRM argues that improper service and excusable neglect warrant relief from the judgment, but both arguments fail.

### 1.

SRM contends that the judgment against it is void due to improper service both under the Constitution and the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 60(b)(4). SRM asserts that service was constitutionally and statutorily improper because SRM's summons was served only at SRM's registered *address* rather than on SRM's registered *agent*. This argument fails; the record plainly shows that SRM was properly served under the Constitution, the Federal Rules of Civil Procedure, and controlling New Jersey law.

Service on SRM was proper under the Federal Rules of Civil Procedure. Under Rule 4(h), Fed. R. Civ. P., a corporation may be served in the same manner as a natural person, and under Rule 4(e)(1), Fed. R. Civ. P., a natural person may be validly served by "following state law for serving a summons … in the state … where service is made." The summons here was served in

New Jersey. That state's law provides, in relevant part, that a "business entity" that "is required to register an address or an agent ... for the service of process" may be served "at the address *or* on the agent registered." N.J. Stat. § 2A:15-30.1(a) (emphasis added). SRM is registered as a foreign LLC in the state of New Jersey. *See* Plaintiff's Opposition to Defendant's Motion to Vacate the Default Judgment and to Dismiss, at Ex. 1 (Dkt. 22-1). SRM's New Jersey registration provides a mailing address for "the company's initial agent for service of process in [New Jersey]," as required by Section 58 of New Jersey's Revised Uniform LLC Act (the "RULLCA"). N.J. Stat. § 42:2C-58(a)(4). There is no genuine dispute that SRM was served "at the address ... registered." Section 2A:15-30.1(a), by its plain text, permits service at a registered address as an alternative to service on a registered agent. The Fund's actions satisfied state law and therefore the Federal Rules.

To avoid this necessary conclusion, SRM asserted for the first time at oral argument that service on an LLC such as SRM was instead governed *exclusively* by Section 17 of the RULLCA, which does not expressly permit service on an LLC at a registered address. *See* N.J. Stat. § 42:2C-17. To begin, SRM waived this argument "by failing to present it in its opening brief." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). Even had this argument not been waived, SRM's argument is squarely foreclosed by the very statute it cites. Section 17 expressly states that it "does not affect the right to serve process, notice, or demand in any other manner provided by law." N.J. Stat. § 42:2C-17(f). Of course, as SRM emphasizes, in the ordinary case, a later statute abrogates a contrary earlier statute. 1 Blackstone, Commentaries *89 ("*leges posteriores priores contrarias abrogant*"). Without delving into the minutiae of the so-called

"presumption against implied repeals,"[8] it is enough to note, as Blackstone did, that abrogation is possible only if the two statutes in question *conflict*; "[o]ne part of a statute must be so construed by another, that the whole may (if possible) stand." 1 Blackstone at *89–90; *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). Here, the two statutes do not, in fact, conflict; instead, they are easily reconciled. As a New Jersey appellate court has now held, Section 17 of the RULLCA is "permissive, not mandatory." *MTAG v. Tao Invs., LLC*, __ A.3d __, 2023 WL 4410631, at *7 (N.J. App. Div. July 10, 2023). Section 17's alternate means of service "prevents an LLC from bypassing its obligation to designate an agent and address for service as a method of thwarting litigation." *Id.* Because Section 42:2C-17 supplements rather than displaces Section 2A:15-30.1(a), the Fund was permitted to serve SRM at SRM's "address for service." *MTAG*, 2023 WL 4410631, at *7. The Fund did just that. Thus, service on SRM was proper, the judgment against SRM is not void, and relief may not be granted under Rule 60(b)(4).

Service on SRM was also constitutional. The Fourteenth Amendment's guarantee of due process of law requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In other words, due process of law requires *reasonable* notice, not *actual* notice. *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014) (due process requires "an effort reasonably calculated to effect actual notice."). In *Snider*, the Fourth Circuit found constitutionally sufficient notice where a Maryland town mailed summonses regarding driving infractions to the registered address of the vehicle that committed the violation. *Id.* at 146–47. It was "difficult" for the *Snider* Court "to imagine a more reasonable attempt at effectuating

---

[8] *See* Caleb Nelson, Statutory Interpretation 525 (2011) (discussing the principle in depth).

actual notice of a driving infraction than the use of registration information collected by the state's transportation agency." *Id.* The Fund here was at least as diligent as the town in *Snider*. The Fund served a summons directed at an LLC at an address the LLC selected for that very purpose. Surely that act was "reasonably calculated" to inform SRM of the case against it. *Id.* at 146. For that reason, due process is not offended here. SRM was therefore properly served, and the judgment against it is not void.

### 2.

SRM also argues that it should be granted relief because its failure to file a timely response to the complaint is attributable to "excusable neglect" pursuant to Rule 60(b)(1), Fed. R. Civ. P. This argument misses the mark; relief under Rule 60(b)(1) would be inappropriate because SRM does not justify or explain its neglect of service. Therefore, there is no excusable neglect on the facts presented, and relief from judgment under Rule 60(b)(1) is not appropriate.

Fourth Circuit precedent divides Rule 60(b)(1) cases into two categories: "(1) those that involve a blame*less* party and a blame*worthy* attorney, and (2) those that involve a blame*worthy* party." *Heyman v. M.L. Mktg. Co.*, 116 F.3d 91, 94 (4th Cir. 1997) (emphasis in original). When the moving party is blameless, an attorney's negligence may constitute a "mistake" or "excusable neglect" within the meaning of the Rule. *Id.* But when the default is due to the party's own failures, "the court's interest in finality and efficiency dominates and the party must adequately defend its conduct in order to show excusable neglect." *Id.* (cleaned up).

Here, SRM is a blameworthy party and must satisfy the tougher *Heyman* standard. SRM cannot claim otherwise, since, by SRM's own admission, it did not retain counsel until after entry of a final judgment in this case. SRM does not meet this heightened showing because it does not "adequately defend its conduct." *Heyman*, 116 F.3d at 94. Thus, SRM's motion must be denied.

Seeking to avoid this conclusion, SRM argues that its lack of actual notice should suffice to show excusable neglect. Ben Strober, SRM's owner's brother-in-law, apparently ignored or did not understand the significance of the summons when it was handed to him at SRM's registered address.[9] He did not pay attention to the summons, instead setting the summons aside with SRM's other mail and eventually losing the summons. Ben Strober Declaration ¶¶ 6–8.

According to SRM, Ben Strober's negligence is excusable and warrants vacating the judgment against it. This argument fails. Importantly, SRM admits that the address where the summons was delivered was indeed SRM's registered address. Ben Strober implies that the company regularly received mail there when he mentions filing the summons "with other mails for [SRM]." Ben Strober Decl. ¶ 7. SRM, it appears, did not check for mail at its registered address, having provided that very address to the state of New Jersey expressly for purposes of service of process. Neither does SRM provide any satisfactory explanation for its failure to check SRM's mail at its registered address. In summary, the facts reflect that SRM's carelessness and neglect was all its own.

The Fourth Circuit confronted a very similar case in *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894 (4th Cir. 1987). There, Lexington received the summons and complaint in its mail room and had an employee sign for them. *Park Corp.*, 812 F.2d at 897. Thereupon, Lexington stated, the papers vanished. "Lexington could not explain the disappearance of the summons and complaint." *Id.* "Lexington failed to show any internal controls for the receipt and processing of legal

---

[9] SRM insists in its briefs that Ben Strober only "allegedly" and "purportedly" received the summons. But the proof of service filed in this action states, under penalty of perjury, that the process server delivered the summons to Ben Strober ("Age: 55; Ethnicity: Caucasian; Gender: Male; Weight: 190; Height: 5'11"; Hair: Brown"). *See* Fed. R. Civ. P. 4(*l*)(1). Ben Strober declares that "someone," presumably the process server, "came to [his] house and asked [him] to sign for some documents related to [SRM]" in January 2022. Ben Strober Decl. ¶ 6. SRM does not argue that the proof of service describes someone other than Ben Stober. In light of the proof of service and Ben Strober's Declaration, SRM's disingenuous attempts to call the fact of service into question are unpersuasive.

papers except the existence of a log," and it offered no evidence of how mail was transmitted from its mail room to the appropriate recipient. *Id.* at 898 (Haynsworth, J., concurring). The Fourth Circuit therefore held that Lexington failed to explain its neglect in any way, let alone demonstrate that its neglect was excusable. *Id.* at 897 (majority opinion).

*Park Corp.* controls this case, and the same result should obtain here. Indeed, SRM's neglect is even less excusable on these facts than Lexington's was on the facts of *Park Corp.* Here, SRM chose to designate Ben Strober's home as its registered address. SRM provided no evidence of its internal procedures, not even the log that was present in *Park Corp.* Moreover, SRM showed no sign that it has *any* policies or internal procedures governing receipt and review of mail at that address. SRM may have carelessly ignored the summons it was sent, but a party cannot be allowed to evade process by simply sticking its head in the sand. In the words of the *Park Corp.* majority, "to hold otherwise would be to allow defaulting defendants to escape the consequences of their inaction." 812 F.2d at 897. Put another way, SRM does not demonstrate *excusable* neglect by alleging that it forgot to open its mailbox or read its mail. There are thus no grounds to grant relief from judgment under Rule 60(b)(1). SRM's motion must be denied.

To counter *Park Corp.*, SRM cites three cases it claims establish excusable neglect when a party lacks actual notice. None is apposite or persuasive. SRM's first case, *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413 (4th Cir. 2010), dealt with a motion to set aside an entry of default under Rule 55(c), Fed. R. Civ. P., rather than a motion for relief from a final default judgment under Rule 60(b). As the *Colleton* Court acknowledged, "the burden on a movant seeking relief under the two rules is not the same. ... Rule 60(b)'s 'excusable neglect' standard is a more onerous standard than Rule 55(c)'s 'good cause' standard, which is more forgiving of defaulting parties because it does not implicate any interest in finality." *Colleton*, 616 F.3d at 420

(distinguishing *Park Corp.* on that ground). SRM's second case, *Westlake Legal Grp. v. Schumacher*, 2014 WL 4097643 (E.D. Va. Aug. 19, 2014), *aff'd sub nom. Westlake Legal Grp. v. Yelp, Inc.*, 599 F. App'x 481 (4th Cir. 2015), did not argue excusable neglect at all. There, the default judgment was void because defendant Yelp, Inc. was not properly served. The *Westlake* plaintiff served process for Yelp, Inc. on a registered agent called CT Systems, but the record in *Westlake* made clear that CT Systems notified the plaintiff that it had refused process because "it was not Yelp's registered agent." 2014 WL 4097643, at *3. Here, SRM did not refuse process, the Fund was not informed SRM lacked actual notice, and (as described above) the judgment against SRM is not void. In SRM's third case, *JTH Tax, Inc. v. Stocker*, 2011 WL 2119409 (E.D. Va. Apr. 29, 2011), the defendant provided documents and witnesses that testified under oath, contrary to the affidavit of service, that the defendant had never been served in any way. 2011 WL 2119409, at *4. There is no such evidence here; SRM provides no reason to disbelieve the affidavit of service. SRM's cited cases are inapposite and distinguishable; they do not alter the result reached here.

### III.

In sum, SRM presents no grounds under Rule 60(b) that would permit setting aside the final judgment against it. SRM has not demonstrated that the judgment against it is void for lack of service, and it has not demonstrated excusable neglect. SRM's motion must be denied. An appropriate Order will issue.

The Clerk of Court is directed to forward a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
August 22, 2023

T. S. Ellis, III
United States District Judge